UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD NEELY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-0048** |
| **SCOTTSDALE INSURANCE COMPANY** | **SECTION: "I" (4)** |

**ORDER**

Before the Court is Plaintiff, Edward Neely's ("Neely") **Motion for Leave to File First Supplemental and Amended Complaint (R. Doc. 17)** which seeks leave of Court to amend his complaint and add non-diverse party defendants, AdjustCo, the adjusting company hired by Defendant, Scottsdale Insurance Company ("Scottsdale") as well as Tim Case ("Case"), the claims adjuster at AdjustCo who adjusted Neely's claims. The motion is opposed. *See* R. Doc. 19. It was heard by oral argument on Wednesday, April 16, 2014.

**I.     Background**

This action was first brought in the Civil District Court Parish of Orleans, and removed on the basis of diversity jurisdiction to this Court, on January 8, 2014. *See* R. Doc. 1, 1. Neely's complaint alleges that Scottsdale issued a policy to him which afforded him dwelling insurance for the period of June 7, 2012, to June 7, 2013, covering seven distinct properties, each of which was subject to separate Limits of Liability. *See* R. Doc. 1, p. 3, ¶ 7. Allegedly, Neely reported claims as to six (6) of these properties for varying degrees of physical damage resulting from or related to

Hurricane Isaac, on or around August 29, 2012. *Id.* In his complaint, Neely alleges that Scottsdale "under-scoped" the damage to the covered properties caused by Hurricane Isaac, "under-priced" the cost to fix said damages and "over-depreciated" the value of the damaged property. *Id.* at ¶8, citing Petition at ¶¶14-15.

On February 7, 2014, the presiding District Judge issued a Scheduling Order in this matter, setting forth the applicable deadlines. *See* R. Doc. 7. The presiding District Judge set forth the deadline for filing all amendments to pleadings as March 10, 2014. *Id.*

As to the instant motion, Neely attempted to file the instant motion for leave to amend his complaint and add non-diverse party defendants, AdjustCo, the adjusting company hired by Scottsdale, as well as Case, the claims adjuster assigned to Neely's claims, on March 10, 2014. *See* R. Doc. 12.

In support of his motion, Neely contends that even though adding these non-diverse party defendants would destroy this Court's subject matter jurisdiction, the amendment should be permitted because the four factors established by the Fifth Circuit Court of Appeals in *Hensgens v. Deere & Co.,* 833 F.2d 1179 (5th Cir.1987), militate in favor of permitting Neely's amendment. Scottsdale opposes the instant motion. *See* R. Doc. 19.

**II.    Standard of Review**

Federal Rules of Civil Procedure ("Rule") 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." Rule 15(a)(2). This, and other federal rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co*., 644 F.2d 439, 444 (5th Cir. 1981). Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Id*.

Leave to amend is by no means automatic, but is within the sound discretion of the trial court. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). In exercising its discretion, the trial court must determine that there is a "substantial reason" for the delay. *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 425 (5th Cir. 2004). The Court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the amendment. *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

Although Rule 15(a) governs the amendments of pleadings, the Fifth Circuit has established that Rule 16(b) "governs the amendment of pleadings after a scheduling order deadline has expired." *S & W Enters., L.L.C. v. S. Trust Bank of Ala., NA,* 315 F.3d 533, 536 (5th Cir. 2003). Rule 16 provides that a scheduling order may only be modified for good cause shown and with the Judge's consent. *See* Fed. R. Civ. Pro. 16(b)(4).

In determining whether a party has provided good cause to amend a pleading after the deadline set in the Scheduling Order, Courts may examine four factors: "(1) the explanation for the untimely conduct; (2) the importance of the requested untimely action; (3) the potential prejudice in allowing

3

the untimely conduct; and (4) the availability of a continuance to cure such prejudice." *Huey v. Super Fresh/Sav-A-Center, Inc.*, No. 07-1169, 2008 WL 2633767, at *1 (E.D. La. June 25, 2008) (citing *S & W Enters.*, 315 F.3d at 535. "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters., LLC*, at 535 (internal quotations and citations omitted).

### III. Analysis

#### A. Timeliness of the Motion

Here, Neely attempted to file the instant motion for leave to amend his complaint and add non-diverse party defendants, AdjustCo, the adjusting company hired by Scottsdale, as well as Case, the claims adjuster assigned to Neely's claims, on March 10, 2014. *See* R. Doc. 12. This motion however, was marked deficient by the Clerk's office on March 11, 2014, and was given seven (7) days to re-file the motion, so that it would relate back to the March 10, 2014 filling date. *See id.* On March 18, 2014, Neely re-filed the instant motion. Therefore, the motion related back to the March 10, 2014 filing date, and as such is timely filed in accordance with the Court's Scheduling Order.

#### B. Leave to Amend - 15(a)

In determining that Neely timely filed the instant motion, the Court shall address the merits of Neely's motion. Neely contends that the amendments seeking to add non-diverse defendants AdjustCo and Case should be permitted as these parties were allegedly involved in the breach of contract action which is at the center of this dispute. *See* R. Doc. 17-1, p. 2. Specifically, Neely alleges both intentional misrepresentation, grossly negligent misrepresentation, and, in the alternative, negligence against these non-diverse parties and Scottsdale asserts that it is not responsible for the alleged misconduct of these adjusters. *Id.* at 3.

In opposition, Scottsdale contend that Neely originally brought this action in state court for recovery of varying degrees of damage to six different properties allegedly caused by Hurricane Isaac. *See* R. Doc. 19. Upon Scottsdale seeking removal of the action to this court, Neely filed a Motion to Remand, which he withdrew after the initial status conference with the presiding District Judge. *Id.* at 1. He now seeks to amend his pleadings to add independent adjusters, who were hired by Scottsdale to inspect the subject properties, in an attempt to defeat this Court's diversity jurisdiction. *Id.* As such, Scottsdale contends that the timing and nature of the instant motion indicate a motive of forum selection, as Neely's proposed amendment does not assert a justifiable claim against the non-diverse defendants. Therefore, Scottsdale contends that the proposed amendment should be disallowed.

Although Rule 15(a) provides that "leave to amend should be freely given" and Rule 20 permits joinder of proper parties, when the court is "faced with an amended pleading naming a new nondiverse defendant in a removed case, [the court must] scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir. 1987), *appeal after remand,* 869 F.2d 879 (5th. Cir. 1989), *reh'g denied,* 875 F.2d 858 (5th Cir. 1989), *cert. denied.* 493 U.S. 851 (1989).

As such, when an amendment would destroy jurisdiction, "most authorities agree that leave should be denied in the absence of strong equities in favor of amendment." *Campagna v. Averitt Exp., Inc.*, No. 99-1007, 1999 WL 386652, *1, n.6 (E.D. La. June 10, 1999); citing *Whitworth v. T.N.T. Bestway Transp. Inc.*, 914 F.Supp. 1434 (E.D.Tex.1996) (citing *Hensgens*, 833 F.2d at 1182). *See also Tomlinson v. Allstate Indem. Co.,* 2006 WL 1331541 (E.D. La. May 12, 2006).

The Fifth Circuit has held that when considering an amendment which would destroy the jurisdiction of a court, "justice requires that the district court consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interest of not having

5

parallel lawsuits." *Hensgens,* 833 F.2d at 1182. Therefore, when determining whether to allow joinder of a party under section 1447(e), a district court examines the factors set out in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir.1987), and does not apply the "freely given" standard of Rule 15(a). *Gallegos v. Safeco Ins. Co. of Indiana*, No.H-09-2777, 2009 WL 4730570 (S.D. Tex. Dec. 7, 2009); *Arthur v. Stern*, No. H-07-3742, 2008 WL 2620116, at *4 (S.D.Tex. June 26, 2008) (citing *Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 & n.11 (5th Cir.1991)); *Tujague v. Atmos Energy Corp.*, No. 05-2733, 2008 WL 489556, at *1-2 (E.D.La. Feb.20, 2008); *Dumas v. Walgreens Co.*, No. 3:05-CV-2290-D, 2007 WL 465219, at * 1 (N.D.Tex. Feb. 13, 2007)). The *Hensgens* factors include "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, [and] [4] any other factors bearing on the equities." *Id.*

### 1. The Purpose of the Amendment

Neely contends that it does not seek to add the non-diverse defendants solely to defeat the jurisdiction of this Court. Neely contends that it initially filed a motion to remand in this matter to add the non-diverse defendants, AdjustCo and Case, for reasons outside those addressed in this proposed amendment, but offered to withdraw the motion and the amendments requested herein if Scottsdale would stipulate that "is would be responsible for the acts and/or failure to act of these adjusting companies and their employees." *See* R. Doc. 17-1, p. 4. However, Scottsdale refused to do so, therefore, Neely filed the instant motion to add these parties to this litigation. *Id.* Therefore, Neely contends that this factor weighs in favor of permitting the amendment.

In opposition, Scottsdale contends that this case is factually similar to the one presented in *Irigoyen v. State Farm Lloyds,* No. CA-C-03-324-H, 2004 WL 398553 (S.D. Tex. Jan. 5, 2004). Therein, the plaintiffs sued their insurer in state court for damages related to the insurer's handling of

6

a property damage claim. *See Irigoyen,* 2004 WL 398553 at *1. The insurer removed the case to federal court pursuant to 28 U.S.C.§1332. After removal, the plaintiffs attempted to file a motion for remand. *Id.* When that was unsuccessful, Scottsdale contends that the plaintiffs moved the court for leave to add two insurance adjusters as non-diverse defendants. *Id.* The Court denied the motion for leave, noting that the proposed amendment appeared to be an "additional attempt to defeat diversity jurisdiction" because the plaintiffs had known about the adjusters' roles in the insurance claim when they filed their original petition in state court. *Id.* at *4. *See also* R. Doc. 19, p. 6.

Similar to the Court's analysis in *Irigoyen,* Scottsdale contends that Neely was aware of Adjust Co's and Case's identities and their roles in the adjustment of his claims when he initiated the *Neely* suit in August 2013, as Neely allegedly accompanied Case during the inspections and communicated with him after the cases. *See* R. Doc. 19, p. 6. However, despite this knowledge, Neely sued Scottsdale only, knowing that "[it] would be held accountable under Louisiana's bad faith statutes, La. Rev. Stat. §22:1892 and §22:1973, if Neely could prove that his claims had not been handled in good faith." *Id.* at p. 6-7. Therefore, Scottsdale argues that Neely's knowledge of AdjustCo and Case's involvement in this matter from its inception, weighs against permitting him leave to amend his complaint at this late of date, after an unsuccessful attempt to remand, to add non-diverse parties. *See id.*

"When courts analyze the first *Hensgens* factor, they consider 'whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed.'" *Tomlinson v. Allstate Indem. Co.,* No. 06-0617, 2006 WL 1331541 at *3-4 (E.D. La. May 12, 2006); citing *Schindler v. Charles Schwab & Co.*, No.05-0082, 2005 WL 1155862, (E.D.La. May 12, 2005) at *3. Courts have concluded "that a plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knows of a non-diverse defendant's identity ... suggests that the purpose of the amendment is destroy diversity." *Id.*

7

Here, during oral argument, counsel for Neely indicated that he became apprised that the independent adjuster may have been liable for issues surrounding his claims as early as 2012, long before this action was filed in this Court in 2013. Therefore, because the Court concludes that Neely was aware of AdjustCo and Case's involvement and actions before the filing of the state court action, the first *Hensgen* factor weighs against the granting of the amendment. *Tomlinson,* 2006 WL 1331541 at *1. However, this does not end the *Hensgen* analysis, as Courts have held that the "first factor is 'not dispositive of this Courts' inquiry.'" *Schindler,* 2005 WL 1155862, at *4.

### 2. Dilatory Timing of the Amendment

Neely contends that he has not been dilatory in seeking leave to amend and add the non-diverse parties, as his request is timely within the deadlines set forth by this Court's Scheduling Order. *See* R. Doc. 17-1, p. 5. Neely contends that Scottsdale will represent that it should have added Adjust Co and Case in the state court petition, even though it would have alleged fraudulent joinder at that stage, just like it has done here. However, Neely contends that his request is timely and in no manner dilatory. Therefore he contends that this factor weighs in favor of granting leave to amend.

In opposition, Scottsdale again references the *Irigoyen* case, stating that therein the Court found that "where a plaintiff knows specifically of an adjuster's role in an insurance dispute but does not sue that adjuster in their original complaint in state court, a later attempt to join that non-diverse adjuster in an amended pleading has been considered dilatory conduct." *Irigoyen*, 2004 WL 398553 at *4. *See also Tomlinson*, 2006 WL 1331541 at *4.

When determining if a plaintiff was dilatory in seeking to amend, "courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between removal and the amendment." *Tomlinson,* 2006 WL 1331541 at *4;

8

*Schindler*, 2005 WL 1155862 at *4. In *Schindler*, the Court concluded that an "amendment filed a month and half after the state court petition and less than thirty days after the case was removed was not dilatory." *Id. cf. Ellsworth, Leblanc, & Ellsworth, Inc. v. Strategic Outsourcing, Inc.,* No. 03-0613, 2003 WL 21783304 (E.D.La. July 30, 2003) (concluding that waiting more than two months after filing the petition and thirty days after removal was dilatory); *Branch-Hines v. Nat'l Tea Co.,* No.89-948, 1989 WL 78407, at *1 (E.D.La. June 30, 1989) (the Court found Plaintiff's attempt to add a non-diverse defendant almost three months after this matter commenced and only after the case had been removed was found dilatory and appeared to be in an attempt to destroy this court's jurisdiction). *See e.g., Tomlinson*, 2006 WL 1331541, at *3 (holding that when the plaintiffs sought leave to amend their complaint against an insurance company to add a nondiverse insurance agent, the plaintiffs purpose in amending was to destroy diversity because they knew of the insurance agent's identity and actions before filing suit in state court); *Anderson v. CSX Sealand, Inc*., No. 96-1642, 1997 WL 16617 (E.D. La. Jan. 14, 1997) (where the Court held that Plaintiff was dilatory in seeking joinder of a non-diverse defendant by amendment when the record indicated that plaintiff knew about the non-diverse party's identity for six months but waited three months before seeking leave to add that party); *Selman v. Wyeth-Ayerst Labs.*(*In re Norplant Contraceptive Prods. Liability Litig*.), 898 F.Supp. 429, 432 (E.D.Tex.1995) (holding that the proposed amendment was intended to defeat diversity when the plaintiffs had to know the identity of the nondiverse doctor who implanted the allegedly defective contraceptive device before they filed the suit in state court); *O'Connor v. Auto. Ins. Co. of Hartford Conn*., 846 F.Supp. 39, 41 (E.D.Tex.1994) (denying leave to amend to add a nondiverse insurance agency because the plaintiff knew of the agency's role but failed to name the agency in the state court petition).

Here, the Court finds that Neely's motion admits that he knew of the existence of Adjust Co and Case when he filed the state court action, as he contends that Scottsdale would have "alleged fraudulent joinder at that stage, just like it has done here." *See* R. Doc. 17-1, p.5. Counsel for Neely also conceded on the record that no new information had been acquired by deposition or discovery that changed the factual information his client had before filing suit. Therefore, the Court finds that Neely has provided no good reason, other than a shift of strategy which would destroy this Court's diversity jurisdiction, for waiting nearly eight months to seek leave to add these defendants. Therefore this factors weighs against granting leave to amend.

### 3. Significant Injury if Amendment is Disallowed

Neely contends that he has alleged wrongdoing, gross negligence and negligence by AdjustCo and Case, the parties who allegedly estimated his claims. *See* R. Doc. 17-1, p. 5. However, because Scottsdale has failed to stipulate that it will be responsible for these claims, Neely contends that he will be severely prejudiced and could go uncompensated for these claims, if he is not permitted to amend his complaint to add these non-diverse defendants. *Id.*

In opposition, Scottsdale contends that Neely will not be prejudiced if this Court disallows his request to add AdjustCo or Case because he does not have justiciable claims against these parties. Scottsdale contends that Neely's claims against Adjust Co and Case are premised on an alleged breach of an insurance contract and /or an alleged breach of an insurer's statutory obligations to timely and properly handle an insured's claims. However, neither of these parties had a contractual or statutory obligation to Neely. Rather, AdjustCo's obligations were to Scottsdale, and Case's obligations were to Adjust Co. Therefore, Neely's claim have no merit and will not cause him prejudice if they are disallowed. *See* R. Doc. 19, p. 9.

In support of this argument, Scottsdale cites to *In re FEMA Trailer Formaldehyde Prod. Lit.,* for the proposition that Neely has no claim against the adjusters, just as the Court found that FEMA's independent contractors were not liable to the plaintiffs for negligence and intentional torts related to their inspection of FEMA trailers. *Id.* citing *In re FEMA,* 838 F.Supp.2d 497 (E.D.La. 2012). Specifically, Scottsdale argues that in this case, the contractors moved for a Rule 12(c) dismissal on the basis that the plaintiffs did not have a cause of action against them. Scottsdale contends that the issue presented before the Court there was "whether the contractors were under a duty to protect the plaintiffs' interests against the complained of damage," even though there was no contractual privity between the parties. *In re FEMA,* 838 F.Supp.2d at 505-507. The Plaintiffs there contended that although there was no contractual privity there was "a special relationship" created by the virtue of the contractors' contractual obligations to FEMA and because the plaintiffs were the "intended beneficiaries" of the independent contractors' work. *Id.* The Court was not persuaded by this argument and dismissed the plaintiffs' claims against the independent contractors, holding that although the independent contractors owed a contractual duty to FEMA, no such duty was owed to the plaintiffs. *Id.* at 510.

Scottsdale also cites to *Smith v. State Farm Ins. Cos,* 2003-1580 (La. App. 4th Cir. 3/3/04); 869 So.2d 909, and *Audler v. CBC Innovis, Inc.,* 519 F.3d 239 (5th Cir.2008) for the proposition that an insurer's adjuster or consultant did not have an independent duty owed to the plaintiffs related to their claims against the adjuster where there was a lack of contractual privity between the parties. *See e.g., Smith,* 869 So.2d 909, 911-913 (Plaintiffs reported a claim to their homeowners insurer for interior water damage and mold and the insurer hired an environmental consultant to perform testing at the plaintiffs' house and to render a report. Plaintiffs sued the insurer and the consultant for

11

damages relating to the adjustment of their claim, alleging that the consultant "breached its duty causing damage to plaintiffs' legally protected interests" by failing to adequately assess the damage and for negligence. The Court found that the consultants had a duty to plaintiffs for them having performed an inspection on the plaintiffs' home for the purpose of the plaintiffs' insurance claim, because the Court found that the consultant owed no legal duty to the plaintiffs where there was no contract between the consultant and the insurer, as there was no legal obligation or legal relationship between the consultant and anyone not a party to that contract). *See also Audler v. CBC Innovis Inc.,* 519 F.3d 239, 245, 254-55 (5th Cir. 2008)(where a homeowner whose home was flooded following Hurricane Katrina sued his mortgage lender's independent adjuster, who had provided flood zone determinations to the lender, for claims of negligence, negligent misrepresentation, detrimental reliance, failure to warn and breach of warranty as a result of the independent adjuster having erroneously reported that the property was outside of a flood zone; the Fifth Circuit held that, under Louisiana law, the plaintiff did not have a cause of action against the adjuster, as the adjuster was contracted by the mortgage lender to prepare a report for the lender, and had no contractual relationship to the homeowner, nor was his report was prepared for the homeowner).

During oral argument the parties indicated on the record that no discovery has yet been conducted in this matter to determine whether or not justiciable claims could be asserted against the adjusters. Therefore, the Court finds that at this time, there is not enough factual information to determine whether or not the adjusters could be held liable. As such, this factor is neutral with regards to granting leave to amend.

    **4.**     **Remaining Equity Factors**

Neely contends that any interest Scottsdale has in maintaining this action in federal court is

heavily outweighed by the prejudice he will suffer by being precluded from seeking complete recourse for all alleged wrongs suffered in this matter. *See* R. Doc. 17-1, p. 6. Neely also argues that this amendment is not futile, as has alleged very specific acts against these prospective parties, which Scottsdale refuses to accept responsibility without limitation. *Id.* Lastly, Neely argues that the alleged causes of action have not prescribed, as they would relate back to the date of the original petition, and, thus are not futile in any regard.

In opposition, Scottsdale contends that there are no equity concerns weighing in favor of Neely's proposed joinder, because his proposed pleading does not assert a justiciable case of action against the proposed defendants. As a result, Scottsdale contends that the legislative intent of the removal statutes should be upheld, as they are in place to provide diverse defendants with a choice of a state or federal forum. *See* R. Doc. 19, p. 12; *Hensgens,* 833 F.2d at 1182. Furthermore, Scottsdale contends that because "insurance companies like Scottsdale that insure risks throughout the country generally have relationships with local independent contractors in every state to facilitate the insurer's ability to quickly and efficiently adjust claims. If federal courts were to condone the post-removal joinder of these independent contractors when the plaintiff's claim is truly just against the insurance company (as it is in this case), diversity jurisdiction would have little meaning to insurance disputes." *Id.* Thus, because there are no equity concerns weighing in favor of Neely's proposed joinder, as his proposed pleading does not assert a justiciable cause of action against the proposed defendants, Scottsdale contends that this factor weighs against granting leave to amend.

When determining "other factors," the Court typically balances the competing interests of the parties. *Tomlinson,* 2006 WL 1331541, at *6. Courts have noted that the defendant "has a compelling interest in maintaining the federal forum. The rationale behind removal statutes is that

diverse defendants have an option of selecting a state or federal forum." *Id. citing Campagna*, 1999 WL 386652 at *2. However, there is "also the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources." *Id. citing Hensgens*, 833 F.2d. at 1182.

Based on an analysis of the above listed factors, the Court finds that denial of Neely's motion will not expose him to the risk of parallel state and federal proceedings or otherwise prejudice him, as his failure to timely seek leave to add these parties when he knew of their existence from the inception of the action weighs heavily against this Court permitting leave to amend at this stage. Furthermore, Neely's delay suggests an intent to destroy diversity and an intent to compromise Scottsdale's real interest in retaining this federal forum. Therefore, this factor weighs against granting leave to amend Neely's complaint.

### IV. Conclusion

**IT IS ORDERED** that Plaintiff's **Motion for Leave to File First Supplemental and Amended Complaint (R. Doc. 17)** is **DENIED**.

New Orleans, Louisiana, this 17th day of April 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

14